## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| **FINANCIAL FEDERAL CREDIT INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **7:05-CV-44 (HL)** |
| **BOSS TRANSPORTATION, INC.,** | : | |
| **WILLIS W. TERRELL, and** | : | |
| **ELIZABETH B. TERRELL,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

Before the Court is Plaintiff Financial Federal Credit's Motion for Summary Judgment (Doc. 12). After consideration of the pleadings, depositions, affidavits, and briefs, the Court hereby grants the Motion for the reasons explained below.

## I. FACTS

On or about July 19, 2000, Boss Transportation, Inc. ("BTI"), executed and delivered to Financial Federal Credit Inc. ("FFCI"), a Promissory Note in the original amount of $271,674.00 ("Note No. 1"). (Kezman Aff. ¶ 6; Ex. P-1.) BTI agreed to repay the amount financed, pursuant to Note No. 1, in fifty-four consecutive monthly installments of $5,031.00. (Kezman Aff. ¶ 6.) These payments were to start on September 1, 2000 and continue on the same day of each month until the amount was paid in full. (Kezman Aff. ¶ 6.) In conjunction with Note No. 1, BTI also executed a Security Agreement ("Security Agreement No. 1"), granting FFCI a security interest in three 1998 Model 379 Peterbilt

Tractors, and a security interest in most of the property in which BTI had any interest. (Kezman Aff. ¶ 7; Ex. P-2.)  Note No. 1 and Security Agreement No. 1 provided for the acceleration of all indebtedness due under the terms of Note No. 1 if BTI defaulted under any obligations to FFCI.  (Kezman Aff. ¶ 8; Ex. P-1, P-2.)

On or about January 11, 2001, BTI executed and delivered to FFCI a Promissory Note ("Note No. 2"), in the original amount of $116,162.05.  (Kezman Aff. ¶ 9; Ex. P-3.)  BTI agreed to repay Note No. 2 in forty-eight consecutive monthly installments as follows: one installment in the amount of $5,808.00, followed by forty-six installments in the amount of $2,348.00 each, followed by one installment in the amount of $2,346.05, with all payments commencing on January 11, 2001, and continuing on the same day of each month thereafter until the amount was paid in full.  (Kezman Aff. ¶ 9; Ex. P-3.)  In conjunction with Note No. 2, BTI executed a Security Agreement ("Security Agreement No. 2"), granting FFCI a security interest in five 2001 AIDTLS Dorsey Van Trailers, and a security interest in most of the property in which BTI had an interest.  (Kezman Aff. ¶ 10; Ex. P-4.)  Note No. 2 and Security Agreement No. 2 provided for the acceleration of all indebtedness due under Note No. 2 if BTI defaulted under any obligations to FFCI.  (Kezman Aff. ¶ 11.)

In addition to these Notes and Security Agreements, on or about July 19, 2000, both Willis W. Terrell and Elizabeth B. Terrell (the "Terrells"), entered into Guaranty Agreements, unconditionally guarantying the payment and performance of all current and future obligations of BTI to FFCI.  (Kezman Aff. ¶¶ 13-16; Ex. P-5, P-6.)

In both Notes and both Security Agreements, FFCI and BTI agreed upon the standard

for determining a commercially reasonable sale  in the event of a default and repossession of the collateral.  (Kezman Aff. ¶ 12.)  Paragraph 8(f) of each Security Agreement provides as follows:

> Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of such sale is mailed to Debtor . . . at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs, or prepares the items for sale.  Secured Party may be the purchaser at any public sale . . . .

(Kezman Aff. ¶ 12; Ex. P-2, P-4.)

Defendants failed to make the November 1, 2002 payment and each payment thereafter on Note No. 1.  (Roberto Aff. ¶ 7.)  Defendants then failed to make the January 11, 2003 payment and each payment thereafter on Note No. 2.  (Roberto Aff. ¶ 7.)  As a result of this default by Defendants on both Notes, Plaintiff accelerated the unpaid balances of the indebtedness.  (Roberto Aff. ¶ 7; Kezman Aff. ¶ 19.)  On April 15, 2003, Plaintiff repossessed the tractors and the trailers from Defendants, which were in poor condition. (Kezman Aff. ¶¶ 21-22; Ex. P-21.)

On or about April 15, 2003 and pursuant to O.C.G.A. § 10-1-36 (2002), Plaintiff separately notified Defendants of its intent to pursue a deficiency, of Plaintiff's right of redemption, and right to demand a public sale of the Tractors and Trailers.  (Roberto Aff. ¶ 11, Ex. P-7, P-8, P-9.)  These Notices were sent by Plaintiff to each Defendant by certified

first class mail, return receipt requested, and with prepaid postage.  (Roberto Aff. ¶¶ 11-12.)

On April 18, 2003, on behalf of each Defendant, Willis W. Terrell signed for and accepted

the Notices.  (Roberto Aff. ¶ 13, Ex. P-10.)  The Post Office has not returned any Notice to

Plaintiff.  (Roberto Aff. ¶ 13.)

Plaintiff separately notified each Defendant on or about June 4, 2003, of its intent to

sell the tractors and trailers at a public sale on Monday, June 16, 2003, on the premises of

American Trailer Exchange in Stockbridge, Georgia.  (Roberto Aff. ¶¶ 14, 17, 20; Ex. P-11,

P-13, P-15.)  These Notices were also sent to each Defendant by certified first class mail with

return receipt requested and prepaid postage.  (Roberto Aff. ¶¶ 15, 18, 21.)  On June 7, 2003,

Willis W. Terrell, on behalf of each Defendant, signed for and accepted the Notices.

(Roberto Aff. ¶¶ 16, 19, 22; Ex. P-12, P-14, P-16.)  The Post Office did not return the

Notices to Plaintiff.  (Roberto Aff. ¶¶ 16, 19, 22.)

Notice of the June 16, 2003 sale was published in *The Atlanta Journal-Constitution*

on June 11 and June 13, 2003.  (Kezman Aff. ¶ 23; Roberto Aff. ¶ 23; Ex. P-17.)  This

newspaper was of general circulation in Henry County, Georgia, the county where the public

sale took place.  (Kezman Aff. ¶ 24; Roberto Aff. ¶ 24.)  Notice of the sale was also

published at the *TruckPaper.com* internet site on June 6, 2003 and Plaintiff separately

notified by mail twenty companies who may have been interested in attending the public sale.

(Kezman Aff. ¶ 23; Roberto Aff. ¶¶ 23, 26; Ex. P-18, P-19, P-20.)

Plaintiff conducted the public sale on June 16, 2003 on the premises of American

Trailer Exchange in Stockbridge, Georgia.  (Kezman Aff. ¶ 26; Roberto Aff. ¶ 27; Barnes

4

Aff. ¶ 8.)  After being available for inspection by potential buyers, the tractors and trailers were sold one at a time.  (Barnes Aff. ¶¶ 8-9; Kezman Aff. ¶ 26; Roberto Aff. ¶ 27.)  On the date of the public sale, the fair market value of the tractors was $12,500.00 and the fair market value of the trailers was $42,500.00 (Kezman Aff. ¶¶ 28-29.)  Prior to the sale of the tractors and trailers, the outstanding balance on Note No. 1 was $138,180.22 and the outstanding balance on Note No. 2 was $61,651.99.  (Kezman Aff. ¶ 34.)   Plaintiff sold the tractors and trailers for a total price of $55,000.00.  (Kezman Aff. ¶ 27.)

On May 20, 2005, Plaintiff filed its Complaint against Defendants to recover the unpaid balance of the deficiency claim.  (Compl. at 2-10.)  On June 9, 2005 Defendants filed their Answer and Counterclaim but later, on June 21, 2005, Defendants filed their Stipulation of Dismissal of the Counterclaim.  (Defs. Answer; Defs. Dismissal of Countercl.)   On December 29, 2005, Plaintiff filed the Motion for Summary Judgment at issue here, alleging that there are no genuine issues of material fact and that Plaintiff is entitled to judgment as a matter of law.  (FFCI Mem. Supp. Mot. Summ. J. at 7-20.)  In support of the Motion and in compliance with Local Rule 56, Plaintiff filed a Statement of Material Facts to Which there is no Genuine Issue of Material Fact to be Tried and many affidavits.  Defendants, who were represented by counsel, failed to respond to the Motion for Summary Judgment.

## II. ANALYSIS

### A.  Summary Judgment Standard

In the Motion for Summary Judgment, Plaintiff complied with Local Rule 56 and

provided a Statement of Material Facts as to Which There is No Genuine Issue to be Tried. As the parties opposing the Motion for Summary Judgment, Defendants were required pursuant to Local Rule 56 to provide "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue of material fact to be tried." Local Rule 56 also provides as follows, "All material facts set forth in the statement served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."  Defendants did not controvert Plaintiff's Statement of Material Facts.  Therefore, in accordance with Local Rule 56, the material facts set forth in Plaintiff's Statement of Material Facts are deemed admitted.

 However, not every statement contained in the Statement of Material Facts will be accepted by the Court.  Only those statements contained in the Statement of Material Facts which are supported by the record will be adopted by the Court.  Furthermore, statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the Court.

Summary judgment is appropriate if the pleadings, depositions, admissions, answers to interrogatories, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  For purposes of a summary judgment motion, a fact is material if it is a legal element of the claim and might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A fact is genuine if "a reasonable jury could return a verdict for the nonmoving

party." Id.  When evaluating a Motion for Summary Judgment, the Court must consider all evidence and "reasonable factual inferences" in the light most favorable to the non-moving party. Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1326 (11th Cir. 2005).

Notwithstanding that the facts set forth in Plaintiff's Statement of Material Facts are deemed admitted, Defendants' failure to respond to the Motion for Summary Judgment does not ensure that Plaintiff's Motion will be granted.  It is well-established that the "party moving for summary judgment . . . '*always* bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of  "the pleadings" . . . which it believes demonstrate the absence of a genuine issue of material fact.'" Livernois v. Medical Disposables, Inc., 837 F.2d 1018, 1022 (11th Cir. 1988) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2553 (1986)).  Therefore, "[b]efore the burden shifts to the nonmoving party to go beyond the pleadings to demonstrate a genuine issue, the moving party must carry its burden of proof." Id. at 1022.  Thus, even in the absence of a response to the Motion from Defendants, "this Court must determine if [Plaintiff] satisfied its 'initial responsibility' of demonstrating that no genuine issue of material fact existed as to each count of the complaint, and, further, whether [Plaintiff is] entitled to summary judgment as a matter of law." Id.

As the movant on the Motion for Summary Judgment and as the party that would bear the burden of proof at trial, Plaintiff's obligation is twofold:  Plaintiff must show that no genuine dispute exists as to any material fact relevant to its claims and must produce such

7

evidence as would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  "'In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.'"  Id. (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc)).

B.  Plaintiff Financial Federal Credit's Motion

Based upon the affidavits and pleadings, no genuine issue of material fact exists and Plaintiff is entitled to judgment as a matter of law.  The uncontroverted facts show that Defendants entered into both Promissory Notes, both Security Agreements, and both Guaranty Agreements with Plaintiff.  (Compl. ¶¶ 8-11, 30; Answer ¶¶ 8-11, 30; Kezman Aff. ¶ 6.)  The uncontroverted facts also show that Defendants defaulted in the terms of the Notes and Guaranty Agreements by failing to make the agreed upon payments.  (Compl. ¶¶ 15, 30; Answer ¶¶ 15, 30; Kezman Aff. ¶¶ 19-20.)  The uncontroverted facts further show that Plaintiff accelerated the payments due by Defendants pursuant to the Notes, and then repossessed the tractors and trailers on April 15, 2003, consistent with the terms of the agreements between the parties.  (Kezman Aff. ¶¶ 19-21.)

The uncontroverted facts further show that Plaintiff provided notice to Defendants of both Plaintiff's intent to pursue a deficiency claim and to hold a public sale of the tractors and trailers.  The notice requirements in a deficiency claim are found in O.C.G.A. § 10-1-36

(2002).[1]  After default:

> [T]he seller or holder shall not be entitled to recover a deficiency against the buyer unless within ten days after the repossession he or she forwards by registered or certified mail . . . to the address of the buyer shown on the contract . . . a notice of the seller's or holder's intention to pursue a deficiency claim against the buyer . . . also advise the buyer of his or her rights of redemption, as well as his or her right to demand a public sale . . . ."

O.C.G.A. § 10-1-36(a) (2002).  In this case, Plaintiff repossessed the tractors and trailers on April 15, 2003.  (Kezman Aff. ¶ 21; Answer ¶ 16.)  On April 15, 2003, Plaintiff separately notified Defendants of its intent to pursue a deficiency, of Defendants' right of redemption, and of their right to demand a public sale of the tractors and trailers.  (Roberto Aff. ¶ 11.) These notices were sent by certified first class mail, with return receipt requested and prepaid postage, and were not returned to Plaintiff.  (Roberto Aff. ¶¶ 11-13.)

Following default and repossession, the holder or seller is also required to separately notify the buyer or debtor of the intent to sell the collateral at a public sale in a "reasonable authenticated notification of disposition."  O.C.G.A. § 11-9-611(b) (2002).  Here, on June 4, 2003, Plaintiff separately notified Defendants of its intent to sell the tractors and trailers at a public sale on Monday, June 16, 2003.  (Roberto Aff. ¶¶ 14, 17, 20.)  These notices were sent by certified first class mail, with return receipt requested and prepaid postage, and the

---

[1] In diversity cases, federal courts must apply federal procedural rules, but substantive state law.  Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938); Byrd v. Blue Ridge Rural Elec. Corp., 356 U.S. 525, 535, 78 S. Ct. 893, 899 (1958).  Substantive summary judgment issues are determined by state law in federal diversity cases.  Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001); Ray v. Continental Western Ins. Co., 920 F. Supp. 1094, 1100 (D. Nev. 1996).  Because this is a diversity case and the Notes and Security Agreements were created in Georgia, Georgia substantive law will be used.

notices were not returned to Plaintiff.  (Roberto Aff. ¶¶ 14-19, 22.)  These notices also complied with   the terms of both Security Agreements, requiring Plaintiff to notify Defendants of the sale at least 10 days prior to the date of the public sale.

### (1) The Public Sale of the Collateral

Plaintiff and Defendants agreed on the terms of a commercially reasonable public or private sale in  Paragraph 8(f) of both Security Agreements.  According to Georgia law, the parties may determine by agreement the standards of the sale, "if the standards are not manifestly unreasonable." O.C.G.A. § 11-9-603(a) (2001).  In Walker v. Modnar Corp., 343 S.E. 2d 148, 150 (Ga. Ct. App. 1986), terms that the parties agreed on for a public sale, that were very similar to the terms of the agreement in the instant case, were held by the Court of Appeals of Georgia to not be "manifestly unreasonable."  In Walker, the Court assumed for purposes of argument, that the agreement by the parties was a transaction governed by the provisions of the Georgia Uniform Commercial Code and that the parties could agree to the standards for the disposition of the collateral.  Id.  The agreement provided that the seller must notify the buyer of the highest offer for the collateral, and permit the buyer to choose between the offer and conducting a separate sale of the collateral.  Id.  The court of appeals held that these terms agreed upon by the parties were not "manifestly unreasonable."  Id.

Additionally, the court of appeals has defined standards that a sale must meet in order to be a "commercially reasonable sale."  In Massey Ferguson Credit Corp. v. Bond, 335 S.E. 2d 454, 454 (Ga. Ct. App. 1985), the Court held that "every aspect of the disposition of repossessed collateral must be reasonable, including its method, manner, time, place and

terms . . . a sale is commercially reasonable where it is done in public, during business hours, upon adequate notice within a reasonable time of repossession and under conditions reasonably calculated to bring a fair market price." Id.

Here, Plaintiff and Defendants agreed upon the standards for a commercially reasonable  sale of the collateral in both Security Agreements.  These standards are not "manifestly unreasonable" and  in fact provide more descriptive rights and duties for the parties than the court of appeals addressed in Walker.  The agreed upon standards also meet the requirements set out by the court of appeals for a "commercially reasonable sale," because the standards provide a reasonable time and manner for the sale during business hours, in a public setting, with adequate notice, and conditions reasonably calculated to bring a fair market price.

The uncontroverted facts show that Plaintiff met the standards and requirements of a public sale of the tractors and trailers.  Plaintiff notified Defendants on June 4, 2003 of its intent to hold a public sale on June 16, 2003 by certified mail, meeting the notice requirement of at least ten days prior to the date of the sale.  Plaintiff published notice of the public sale at least ten days prior to sale by publishing the notice in *The Atlanta-Journal Constitution* on June 11, 2003 and on June 13, 2003, on the *TruckPaper.com* internet site on June 6, 2003, and separately notifying twenty dealers as potential buyers through regular mail.  Plaintiff further complied with the Security Agreements by selling the tractors and trailers at the same established dealership and allowing for the inspection of the tractors and trailers by potential buyers prior to the sale.  Therefore, the uncontroverted facts establish that Plaintiff complied

with the agreed upon, commercially reasonable standards, for the public sale of the collateral.

**(2) The Balance Due**

No genuine issue of material fact exists as to the outstanding deficiency balance that Defendants owe Plaintiff.  Proceeds from the sale of collateral are applied to a deficiency balance pursuant to O.C.G.A. § 11-9-608(a) (2002):

> A secured party shall apply . . . the cash proceeds of collection or enforcement . . . in the following order to: (1) To reasonable expenses of collection and enforcement, to the extent provided for by the Agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the Secured Party; (2) To the satisfaction of obligations secured by the security interest; and (3) To the satisfaction of obligations secured by any subordinate security interest.

In this case, prior to the sale of the tractors and trailers, the outstanding balance on Note No. 1 was $138,180.22, and the outstanding balance on Note No. 2 was $61,651.99.  (Kezman Aff. ¶ 34.)  Plaintiff sold the tractors and trailers for a total price of $55,000.00 and, the total expenses relating to the sale were $12,339.61.  (Kezman Aff. ¶¶ 27, 33.)  After applying the proceeds from the sale of the tractors and trailers, the total outstanding deficiency balance excluding attorney fees and interest totaled $157,171.82.  (Kezman Aff. ¶ 34.)

Pursuant to the agreed upon terms of both Note No.1 and Note No. 2, interest accrues at the rate of 0.0666% per diem or at the rate of $104.68 per diem.  (Kezman Aff. ¶ 35; Ex. P-1, P-3.)  As of April 6, 2006, 1,024 days have elapsed since the date of the public sale on June 16, 2003.  Based on the per diem rate of $104.68, as of April 6, 2006, interest has accrued in the amount of $107,192.32.  Thus, the total outstanding deficiency balance, excluding attorney fees, totals $264,364.14.

Additionally, pursuant to O.C.G.A. § 13-1-11 (2002), and the terms of the Notes, Plaintiff is entitled to reasonable attorney fees.  Upon deficiency, the holder of a note or other evidence of indebtedness is required to notify the debtor of the obligation of attorney fees as agreed upon by the parties.  O.C.G.A. § 13-1-11(a)(3).  If the Note provides for payment of reasonable attorney fees, without specifying any specific percent, "such provisions shall be construed to mean fifteen percent of the first $500.00 of principal and interest owing on such note . . . and ten percent of the amount of the principal and interest owing thereon in excess of $500.00."  O.C.G.A. § 13-1-11(a)(2).  In this case, Plaintiff notified Defendants of their obligation of attorney fees in writing.  (Compl. ¶ 35.)  Defendants agreed in both Note 1 and Note 2 to pay reasonable attorney fees in the collection of any outstanding amounts, but the Notes did not agree on a specific percent.  Therefore, applying the above statutory formula, Plaintiff is entitled to recover attorney fees, as of April 6, 2006, in the amount of $26,461.41.[2]

Accordingly, as of April 6, 2006, the total outstanding balance that Defendants owe Plaintiff is in the amount of $290,825.55.

## III. CONCLUSION

In conclusion, Plaintiff Financial Federal Credit's Motion for Summary Judgment is granted.  Plaintiff is entitled to recover $290,825.55 from Defendants, jointly and severally.  There being no other matters remaining, let judgment be entered accordingly.

---

[2]The statutory formula is applied as follows: (1) 15% of the first $500.00 of principle and interest owed on the Notes, totaling $75.00; (2) 10% of the remaining balance of principle and interest owed on the Notes ($263,864.14), totaling $26,386.41; (3) Adding the amounts from (1) and (2) to equal the total amount of attorney fees Plaintiff is entitled to, $26,461.41.

13

**SO ORDERED**, this the 6th day of April, 2006.

_____
s/   Hugh Lawson
**HUGH LAWSON, Judge**

emd